IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

WILLIAM COLBERT,

      Petitioner,

v.                //       CIVIL ACTION NO. 1:10CV19
                                 CRIMINAL ACTION NO. 1:06CR94
                                 (Judge Keeley)

UNITED STATES OF AMERICA,

      Respondent.

MEMORANDUM OPINION AND ORDER
ADOPTING REPORT AND RECOMMENDATION

Pending before the Court is the magistrate judge's Report and Recommendation ("R&R") concerning the 28 U.S.C. § 2255 petition filed by William Colbert. For the following reasons, the Court **ADOPTS** the magistrate judge's R&R in its entirety and **DISMISSES** this case **WITH PREJUDICE**.

I.

On September 13, 2006, a grand jury indicted the petitioner, William Colbert ("Colbert"), on four counts of a six-count indictment. United States v. Colbert, No. 1:06cr94 (Dkt. No. 1). Subsequent to a comprehensive Rule 11 hearing before United States Magistrate Judge John S. Kaull, Colbert entered a guilty plea to Count Two, distribution of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c), on December 1, 2006. Id. at (Dkt. No. 31). His plea agreement contained the following waiver:

Mr. Colbert is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, the defendant

COLBERT V. USA                                          1:10CV19
                                                       1:06CR94
                   MEMORANDUM OPINION AND ORDER
                   ADOPTING REPORT AND RECOMMENDATION

        knowingly waives the right to appeal any sentence with a
        base offense level of thirty-four (34) or lower under the
        U.S.S.G. (or the manner in which that sentence was
        determined) on the grounds set forth in Title 18, United
        States Code, Section 3742, in exchange for the
        concessions made by the United States in this plea
        agreement. The defendant also waives his right to
        challenge his sentence or the manner in which it was
        determined in any collateral attack, including, but not
        limited to, a motion brought under Title 28, United
        States Code, Section 2255. The parties have the right
        during any appeal to argue in support of the sentence.

Id. at (Dkt. No. 32 at 3).

     The Court conducted a sentencing hearing on March 12, 2007.

Id. at (Dkt. No. 46). It calculated Colbert's base offense level at

32, squarely within the four corners of his appellate waiver, and

determined that his final adjusted offense level was a 29 and his

criminal history category was a VI. Id.[1] Thereafter, upon careful

consideration of the factors set forth in 18 U.S.C. § 3553(a), the

Court imposed a sentence of 151 months of incarceration - the

lowest end of the applicable guideline range – and three years of

supervised release. Id. The next day, on March 13, 2007, it entered

judgment. Id. at (Dkt. No. 47). Colbert's right to file a direct

---

[1] The Court found that Colbert, prior to any Chapter 4 enhancements, was
a criminal history category IV, with nine (9) criminal history points,
and was responsible for a quantity of cocaine base correlating to a base
offense level 32. It then determined that he qualified for the career
offender enchantment pursuant to U.S.S.G. § 4B1.1, which enhanced his
criminal history category to VI. It subtracted three offense levels for
acceptance of responsibility pursuant to § 3E1.1.

2

COLBERT V. USA                                          1:10CV19
                                                        1:06CR94
                    MEMORANDUM OPINION AND ORDER
                  ADOPTING REPORT AND RECOMMENDATION

appeal expired ten business days later, on March 27, 2007.[2] He did
not appeal.

     Almost three years later, on January 5, 2010, Colbert wrote a
letter to the Court alleging that, shortly after his sentencing
hearing, he had learned of his infant daughter's sudden death. Id.
at (Dkt. No. 60 at 1). He complained that he was grieved and thus
"[un]able to focus," and his attorney nevertheless "did not file
for an extinction [sic]" of time to appeal. Id. He further alleged
that he had spoken to his attorney "[s]ince [his] sentencing" and
learned that, contrary to his expectations, certain changes to the
United States Sentencing Guidelines would not, in fact, reduce his
sentence. Id. at 1. He asked if the Court could, given these
circumstances, "revoke [his] plea" and "pull [him] back and
resentence [him]." Id. at 3.

     The Court received and docketed the letter on January 21,
2010. Id. That same day, it sent a Notice to Colbert advising him
that it would construe his correspondence as a Motion to Vacate,
Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 unless

_____

[2] The Court recognizes that this calculation differs slightly from that
of the magistrate judge. At the time when the court entered the criminal
judgment, however, Fed. R. App. P. 4(b)(1)(A) provided that a notice of
appeal had to be filed in the district court within ten days after entry
of the judgment from which the defendant wished to appeal, and pursuant
to Fed. R. App. P. 26(a), weekends and holidays were not counted in
calculating the ten-day period.

                                  3

**COLBERT V. USA**                                          **1:10CV19**
                                                           **1:06CR94**

### MEMORANDUM OPINION AND ORDER
### ADOPTING REPORT AND RECOMMENDATION

he responded to the contrary within twenty-one (21) days. Id. at (Dkt. No. 62). The Notice detailed the consequences of this conversion and included an election form for Colbert's decision and signature. Id.[3]

On January 26, 2010, Colbert signed the provided form and elected to convert his letter to a motion filed pursuant to 28 U.S.C. § 2255. Id. at (Dkt. No. 64). The Court received the signed form on February 1, 2010, at which time it re-docketed the January 5, 2010 letter as a § 2255 motion and filed it as the initial pleading in this civil action. (Dkt. No. 1). The Court then referred this matter to United States Magistrate Judge David J. Joel for initial screening and an R&R in accordance with LR PL P 2.

Upon a preliminary review of the petition, Magistrate Judge Joel found that it was time-barred on its face, having been filed more than one year and nine months after the one-year statute of limitations had expired. See 28 U.S.C. § 2255(f)(1). Accordingly, the magistrate judge issued a Hill v. Braxton[4] notice to Colbert on February 2, 2010, advising him that his case would be dismissed unless he demonstrated within thirty (30) days that his motion was timely. (Dkt. No. 3). Twenty days later, on February 22, 2012,

---

[3] This Notice satisfied the pre-conversion notice requirements outlined in United States v. Blackstock, 513 F.3d 128, 133 (4th Cir. 2008).

[4] 277 F.3d 701, 707 (4th Cir. 2002).

4

COLBERT V. USA                                          1:10CV19
                                                        1:06CR94

### MEMORANDUM OPINION AND ORDER
### ADOPTING REPORT AND RECOMMENDATION

Colbert moved for leave to amend his petition. (Dkt. No. 8). That same day, the magistrate judge granted the motion and, having received no acknowledgment that the earlier notice was received, re-issued the Hill v. Braxton notice. (Dkt. Nos. 9, 10).

On March 4, 2010, Colbert filed an amended § 2255 petition setting forth three separate grounds for relief: (1) his counsel was ineffective for failing to file an appeal; (2) his guilty plea was defective because he was suffering from a mental disease or defect that impaired his ability to understand the nature of the charge or the consequences of a plea; and (3) his counsel was ineffective for failing to notify the Court of his mental disease or defect and for failing to seek a competency determination. (Dkt. No. 14 at 4).

More than a month later, on April 19, 2010, Colbert finally filed his response to the Hill v. Braxton notices,[5] arguing that his petition is timely because he is entitled to equitable tolling of the one-year limitations period. (Dkt. No. 17). Specifically, he alleges he learned for the first time "[i]n January 2008" that, contrary to his explicit instructions, his attorney had not filed a direct appeal. Id. at 2. Upon this discovery, Colbert avers, he

---

[5] As noted by the magistrate judge, Colbert filed a response to the Hill v. Braxton notice seventy-six days after it was first issued, and fifty-six days after it was re-issued.

COLBERT V. USA                                          1:10CV19
                                                        1:06CR94
                  MEMORANDUM OPINION AND ORDER
                ADOPTING REPORT AND RECOMMENDATION

prepared - and completed - a § 2255 petition in "[m]id-February
2008." Id. at 2. He was placed in administrative detention "shortly
thereafter," however, and "all [of his] legal property, including
the 2255 motion, was confiscated" by the Bureau of Prisons ("BOP").
Id. at 2. He states that he was subsequently transferred to a new
institution and, when his legal property was returned to him, the
completed § 2255 petition was missing. Id. Colbert maintains that
he wrote the January 5, 2010 letter to the Court after a "thorough
search" for the missing petition. Id.

     On motion of the government, on August 10, 2011, Magistrate
Judge Joel conducted an evidentiary hearing in this matter. Colbert
and his appointed counsel, B. Craig Manford, appeared in person,
and Assistant United States Attorney Zelda Wesley and Federal
Public Defender Brian J. Kornbrath ("Kornbrath"), Colbert's trial
counsel, appeared by video. Magistrate Judge Joel received
testimony from both Colbert and Kornbrath and, at the conclusion of
the hearing, took the matter under advisement.

     On September 19, 2011, Magistrate Judge Joel issued an Opinion
and Report and Recommendation ("R&R") concluding that (1) Colbert
had failed to carry his burden of showing that Mr. Kornbrath was
ineffective for failing to file a direct appeal; and (2) that, in
any event, Colbert had demonstrated no valid basis for equitable
tolling and, as such, his entire petition must be dismissed as

COLBERT V. USA                                          1:10CV19
                                                        1:06CR94
**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION**
_____

untimely. (Dkt. No. 39). Colbert, by counsel, filed objections to the R&R on December 12, 2011, (dkt. no. 48), and the government responded in support of the R&R on January 3, 2012. (Dkt. No. 51). After a <u>de novo</u> review of the issues raised, the Court, for the reasons that follow, finds that Colbert's objections are without merit.

## II.

A habeas corpus petitioner is entitled to equitable tolling only where that petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." <u>Holland v. Florida</u>, 130 S.Ct. 2549, 2553 (2010) (quoting <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005)). The "extraordinary circumstances" test "requires the petitioner to present (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." <u>Rouse v. Lee</u>, 339 F.3d 238, 251 (4th Cir. 2003) (citing <u>Harris v. Hutchinson</u>, 209 F.3d 325, 330 (4th Cir. 2000)). Accordingly, to be entitled to equitable tolling, a petitioner must show that he has been diligently pursuing his rights and that some extraordinary and external condition prevented him from filing within the limitations period.

7

COLBERT V. USA                                          1:10CV19
                                                       1:06CR94
                    MEMORANDUM OPINION AND ORDER
                  ADOPTING REPORT AND RECOMMENDATION

                                III.

     The statute of limitations for Colbert's petition expired on
March 27, 2008, one year after his judgment of conviction became
final. 28 U.S.C. § 2255(f)(1); see Clay v. United States, 537 U.S.
522, 525 (2003). He did not file the instant petition until January
2010, approximately one year and nine months after this deadline
had passed. As such, the issue before the Court is whether Colbert
has shown that he is entitled to equitable tolling. If he is not,
his petition is untimely and must be dismissed.

                                 A.

     Colbert's first argument for equitable tolling is that his
trial counsel was ineffective in failing to file a direct appeal,
and he did not learn of this failure until "January 2008." (Dkt.
No. 17 at 2). His tardiness is excused, he contends, because he
"could not in good faith have filed a collateral attack . . . when
it appeared a direct appeal was pending." Id. at 3. The magistrate
judge concluded that Colbert did not meet his burden of proving
either that his attorney was ineffective or that this circumstance
would warrant equitable tolling. (Dkt. No. 39 at 17). The Court
agrees.

                                 8

COLBERT V. USA                                              1:10CV19
                                                           1:06CR94
                  MEMORANDUM OPINION AND ORDER
                  ADOPTING REPORT AND RECOMMENDATION
_____

                              1.

     Turning first to the substance of the ineffective assistance
claim, Colbert alleges that, immediately after his sentencing
hearing, he told Kornbrath to "put in the appeal." (Dkt. No. 48 at
1). Kornbrath testified that he did not remember being instructed
to file an appeal, and that if he had been so instructed, he "would
have met with [Colbert] in an attempt to explain why an appeal
would not be advisable, but would do so if [Colbert] insisted."
(Dkt. No. 39 at 10). The magistrate judge, who had the opportunity
to observe Colbert's demeanor first-hand, determined that he was
not credible on the issue of whether he unequivocally instructed
his attorney to file an appeal. (Dkt. No. 39 at 12). After a
thorough, de novo review of the evidentiary record, the Court
adopts this finding and concludes that Kornbrath's failure to file
an appeal was reasonable in light of the circumstances.

     To establish ineffective assistance of counsel under the
familiar standard of Strickland v. Washington, 466 U.S. 668, 104
(1984), a defendant must show that his counsel's representation
"'fell below an objective standard of reasonableness,' and . . .
that 'the deficient performance prejudiced the defense.'" United
States v. Cooper, 617 F.3d 307, 312 (4th Cir. 2010) (citing
Strickland, 466 U.S. at 687–88). An attorney who fails to file an
appeal when his client "unequivocally instruct[s]" him to do so is

                              9

COLBERT V. USA                                              1:10CV19
                                                           1:06CR94

### MEMORANDUM OPINION AND ORDER
### ADOPTING REPORT AND RECOMMENDATION

per se ineffective. United States v. Poindexter, 492 F.3d 263, 269 (4th Cir. 2007); Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). Where a defendant has not specifically requested an appeal, however, the attorney's deficiency in failing to appeal is measured by asking whether the attorney had consulted with the defendant about an appeal. Frazer v. South Carolina, 430 F.3d 696, 703 (4th Cir. 2005) (citing Flores-Ortega, 528 U.S. at 478-79). The duty to consult is constitutionally required when there is reason to think either (1) a rational defendant would want to appeal; or (2) the particular defendant reasonably demonstrated to counsel that he was interested in appealing. United States v. Cooper, 617 F.3d 307, 313 (4th Cir. 2010) (citing Flores-Ortega, 528 U.S. at 480).

Here, Colbert has presented no evidence, other than his own self-serving testimony, to suggest that he ever instructed Kornbrath to file an appeal. The government, in contrast, has produced ample evidence militating in favor of the opposite conclusion. Kornbrath, for example, testified - very credibly - that if he had been told to file an appeal, he would have met with Colbert to explain why such a course would be unadvisable and, if Colbert had still insisted, he would have done as requested.[6] The

---

[6] The Court notes that it has had countless opportunities to observe Kornbrath, who, as the federal public defender, has appeared before this Court for many years. The track record of the Federal Public Defender's Office in aggressively representing their clients and filing appeals on

COLBERT V. USA                                          1:10CV19
                                                       1:06CR94

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION**

government also introduced a letter from Kornbrath to Colbert dated
March 14, 2007, the day after the sentencing hearing, advising
Colbert that, in the absence of any instruction to the contrary,
Kornbrath would not file a notice of appeal in his case. United
States v. Colbert, No. 1:06cr94 (Dkt. No. 121-3 at 2).[7] It is
undisputed that Colbert, despite being in contact with Kornbrath's
office soon after his sentencing hearing regarding his daughter's
funeral arrangements, failed to even broach the topic of an appeal
with either Kornbrath or his staff.

Further, despite both parties agreeing that Kornbrath and
Colbert were in contact subsequent to the sentencing hearing,
there is no question that Colbert did not mention the appeal he
purportedly believed was pending through "January 2008" until he
filed his Hill v. Braxton response on April 10, 2010. (Dkt. No. 17
at 2). Colbert himself introduced a letter he allegedly wrote to
Kornbrath on May 25, 2007, two months after his sentencing hearing,
which requested certain documents "because my family wants to see

their behalf is well known to the Court.

[7] While Colbert argues that there is no proof he actually received this
letter, he misses the point – the very fact that Kornbrath penned the
letter after the sentencing hearing lends support to the government's
argument that Kornbrath had not, as Colbert insists, already been
instructed to "put in the appeal." Furthermore, as the government points
out, Colbert acknowledged at the evidentiary hearing that he was aware
of funeral arrangements for his infant daughter, which were communicated
in that same letter.

COLBERT V. USA                                        1:10CV19
                                                      1:06CR94
**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION**
_____

what was said a [sic] my sentenceing [sic]" with no reference to
the supposedly pending appeal. United States v. Colbert, No.
1:06cr94 (Dkt. No. 121-4). Kornbrath testified that he received a
letter from Colbert on October 16, 2008, nine months after Colbert
allegedly learned no appeal had been filed, which requested copies
of certain documents and, once again, did not bring up any issues
related to an appeal. (Dkt. No. 39 at 10). It simply defies
credulity that a litigant like Colbert, with a demonstrated ability
and desire to freely communicate with his trial counsel and the
Court, would assume for more than nine (9) months, without any
inquiry or confirmation, that an appeal was pending in his case,
and then wait over two years more before making any mention of his
discovery to the contrary.

     In sum, the Court finds that Colbert's allegations, which have
grown from a complaint that Kornbrath "did not file for an
extinction [sic]" of time to appeal in light of Colbert's post-
sentencing "state of mind," (dkt. no. 1 at 1), to a claim that
Kornbrath outright refused to obey Colbert's direct instruction,
(dkt. no. 17 at 1), are not credible. It therefore agrees with the
magistrate judge that Colbert has failed to show that he
"unequivocally instruct[ed]" his attorney to file an appeal.
Poindexter, 492 F.3d 263, 269.

COLBERT V. USA                                                    1:10CV19
                                                                  1:06CR94
MEMORANDUM OPINION AND ORDER
ADOPTING REPORT AND RECOMMENDATION

Colbert argues, in the alternative, that Kornbrath was ineffective in failing to consult with him about an appeal. The constitutional duty to consult, however, arises where the attorney has reason to believe either (1) a rational defendant would want to appeal; or (2) the particular defendant reasonably demonstrated to counsel that he was interested in appealing. Cooper, 617 F.3d at 313 (citing Flores-Ortega, 528 U.S. at 480). Here, the Court has already determined that Colbert has presented no credible evidence that he ever expressed any interest in appealing his sentence. Indeed, he both orally waived his appeal rights and signed a plea agreement waiving the same. United States v. Colbert, No. 1:06cr94 (Dkt. No. 109). As such, the pertinent question is whether a rational defendant would have desired an appeal in this case.

"[I]n determining whether a rational defendant would have wanted to appeal, we consider important the facts concerning whether the defendant's conviction followed a trial or a guilty plea; whether the defendant received the sentence bargained for as part of the plea; and whether the plea expressly reserved or waived some or all of the appeal rights." Cooper, 617 F.3d at 313. In Colbert's case, all three considerations lead to the conclusion that a rational defendant in his position would not have wanted to appeal. His conviction followed a guilty plea, in which he expressly waived his appeal rights. He repeatedly affirmed during

13

COLBERT V. USA                                          1:10CV19
                                                        1:06CR94
                     MEMORANDUM OPINION AND ORDER
                    ADOPTING REPORT AND RECOMMENDATION

his plea colloquy that he was fully aware of the various
consequences of his plea, including his appellate waiver, and had
been adequately counseled by Kornbrath. United States v. Colbert,
No. 1:06cr94 (Dkt. No. 109). He received the "best case scenario"
of the sentence he bargained for in his plea agreement, i.e., the
lowest end of the lowest guideline range contemplated by his pre-
sentencing estimates. (Dkt. No. 39 at 13). His expectations were
met, he was solidly within the four corners of his appellate
waiver, and "no nonfrivolous grounds for appeal remained that would
have put [Kornbrath] on notice that a reasonable defendant would
have wanted to appeal." Cooper, 617 F.3d at 313. The magistrate
judge thus correctly concluded that Kornbrath did not have a
constitutionally imposed duty to consult with Colbert about an
appeal.

     For all these reasons, the Court **OVERRULES** the petitioner's
objections and **ADOPTS** the magistrate judge's finding that Kornbrath
was not ineffective in failing to file an appeal in this case.

                                **2.**

     Colbert contends that the statute of limitations for his
petition should be tolled until "January 2008" because he "could
not in good faith have filed a collateral attack pursuant to
Section 2255 when it appeared a direct appeal was pending." (Dkt.

                                 14

COLBERT V. USA                                          1:10CV19
                                                        1:06CR94
                    MEMORANDUM OPINION AND ORDER
                   ADOPTING REPORT AND RECOMMENDATION
_____

No. 17 at 3). The fact that an appeal had not been filed, however,
was simply a "matter of public record, which reasonable diligence
could have unearthed," Owens v. Boyd, 235 F.3d 356, 360 (7th Cir.
2000); see also Green v. Johnson, 515 F.3d 290, 305 (4th Cir.
2008). Moreover, Colbert's own allegations preclude a finding that
Kornbrath's failure to appeal actually "prevented [Colbert] from
filing on time," as required to invoke equitable tolling
principles. Lee, 339 F.3d at 251. Colbert contends that he
discovered no appeal was pending in "January 2008" and completed a
§ 2255 petition by "mid-February 2008" – more than a month before
the limitations period expired. (Dkt. No. 17 at 2).

        Consequently, as Colbert has failed to demonstrate either that
he exercised reasonable diligence relative to his appeal or that
his belief in its pendency prevented him from filing a timely
§ 2255, the Court **OVERRULES** his objections and **ADOPTS** the
magistrate judge's conclusion that Colbert's ineffective assistance
argument is not a valid basis for equitably tolling the statute of
limitations.

                                B.

        Colbert's second argument for equitable tolling is that, after
he had completed a § 2255 petition in "mid-February 2008," the BOP
placed him in administrative detention and confiscated "all [his]

                                15

COLBERT V. USA                                                    1:10CV19
                                                                 1:06CR94
                    MEMORANDUM OPINION AND ORDER
                  ADOPTING REPORT AND RECOMMENDATION
_____

legal property." (Dkt. No. 17 at 2). He maintains that the § 2255
petition was missing when his property was "finally" returned to
him, at which point he contacted the Court via the letter docketed
on January 21, 2010. Id. As the magistrate judge correctly found,
however, these vague allegations are wholly insufficient to justify
equitable tolling.

     Although the ordinary difficulties of prison life do not
typically qualify as "extraordinary circumstances" sufficient to
warrant equitable tolling, see, e.g., Allen v. Johnson, 602
F.Supp.2d 724, 728-29 (E.D. Va. 2009), some courts have found that
"[t]he intentional confiscation of a prisoner's habeas corpus
petition and related legal papers by a corrections officer is
'extraordinary' as a matter of law." Valverde v. Stinson, 224 F.3d
129, 133 (2d Cir. 2000). Even assuming that Colbert's alleged
circumstances were "extraordinary," however, he must nevertheless
demonstrate a causal relationship between those circumstances and
the lateness of his filing, id. at 134, as well as his own
diligence in "pursu[it] of his remedies during the time that he was
allegedly deprived of access to legal materials." Howard v.
Reynolds, No. 6:09-2088, 2010 WL 4386946, at *15 (D.S.C. July 19,
2010). Colbert fails on both fronts.

     Here, Colbert has failed to demonstrate how the BOP's alleged
confiscation of his legal materials - which occurred almost two

COLBERT V. USA                                           1:10CV19
                                                        1:06CR94

### MEMORANDUM OPINION AND ORDER
### ADOPTING REPORT AND RECOMMENDATION

<u>years</u> before the instant petition was filed - actually caused his protracted delay in seeking habeas relief. In particular, he fails to allege clearly what the confiscated legal materials were, how long he was without them, when they were returned, or how exactly his lack of access to these materials impacted his ability to timely file his federal petition. <u>Allen</u>, 602 F.Supp.2d at 729. Indeed, as demonstrated at the evidentiary hearing, Colbert wrote a letter to Kornbrath on October 16, 2008, well after his materials were allegedly confiscated. (Dkt. No. 39 at 10). Given his apparent access to the mails long before January 2010, there is simply no discernable reason why Colbert could not have earlier drafted a second petition re-alleging his claims, which were already fully realized, and forwarded the same to the Court.

Similarly, it is clear beyond peradventure that Colbert did not diligently pursue his rights. Although he is apparently aware that it is a manifest violation of BOP regulations to confiscate all of a prisoner's legal materials, (dkt. no. 17 at 4), Colbert fails to allege, much less show, that he ever filed any administrative grievances in an attempt to remedy this violation. Indeed, he does not even allege that he ever asked anyone for his materials to be returned. Far from demonstrating how he acted with reasonable diligence throughout the almost two-year period he seeks to toll, Colbert has provided the Court with absolutely no basis

17

COLBERT V. USA                                              1:10CV19
                                                           1:06CR94
**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION**

for determining what, if anything, he did in order to retrieve his seized legal materials or preserve his habeas rights.

In sum, Colbert has failed to show that he was prevented from timely filing by extraordinary circumstances that were beyond his control. As such, equitable tolling of the statute of limitations is not merited and the instant petition must be dismissed as untimely. The Court thus **OVERRULES** the petitioner's objections and **ADOPTS** the magistrate judge's conclusion that Colbert's claims are barred by 28 U.S.C. § 2255(f)(1).

**IV.**

For the reasons discussed, the Court:

1.   **ADOPTS** the Report and Recommendation in its entirety (dkt. no. 39);

2.   **DENIES** Colbert's § 2255 petition (dkt. no. 1) and amended § 2255 petition (dkt. no. 14); and

4.   **ORDERS** that this case be **DISMISSED WITH PREJUDICE** and **STRICKEN** from the docket of this Court.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is also required to issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a

**COLBERT V. USA**                                                 1:10CV19
                                                                   1:06CR94

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION**

constitutional right." 28 U.S.C. § 2253(c)(2). Upon its review of
the record, the Court finds that Colbert has presented no colorable
issues of a constitutional dimension and, as such, **DECLINES** to
issue a certificate of appealability.

It is so **ORDERED.**

Pursuant to Fed. R. Civ. P. 58, the Court directs the Clerk of
Court to enter a separate judgment order and to transmit copies of
both orders to counsel of record and to the petitioner, certified
mail, return receipt requested.

Dated: March 27, 2013.

IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE